# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT    [ ] INFORMATION    [ ] INDICTMENT    [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

## OFFENSE CHARGED

18 U.S.C. 922(g)(1) - Felon in Possession of Firearm and Ammunition

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

**PENALTY:**
Prison: 15 years — 18 U.S.C. § 924(a)(2)
Fine: $250,000 — 18 U.S.C. § 3571
Supervised Release: 3 years — 18 U.S.C. § 3583
Special Assessment: $100 — 18 U.S.C. § 3013

**DEFENDANT - U.S**
▶ Anthony PEARSON

**DISTRICT COURT NUMBER**
4:26-mj-70244 MAG

**FILED**
March 6, 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## PROCEEDING

**Name of Complaintant Agency, or Person (& Title, if any)**
FBI/SA Mikel Bergh

[X] person is awaiting trial in another Federal or State Court, give name of court
Alameda County Superior Court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY    [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

**Name and Office of Person Furnishing Information on this form** — Craig H. Missakian
[X] U.S. Attorney    [ ] Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned)**

## DEFENDANT

**IS NOT IN CUSTODY**
1) [ ] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction    [ ] Federal [ ] State
6) [X] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution
Santa Rita Jail

Has detainer been filed? [ ] Yes [ ] No — If "Yes" give date filed: Month/Day/Year

**DATE OF ARREST** ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[ ] SUMMONS    [ ] NO PROCESS*    [X] WARRANT    Bail Amount: No Bail

If Summons, complete following:
[ ] Arraignment    [ ] Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:    Before Judge:

Comments:

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Anthony Marvin K. PEARSON<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 4:26-mj-70244 MAG<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __May 17, 2025__ in the county of __Alameda__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of firearm and ammunition. |

**FILED**
March 6, 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

This criminal complaint is based on these facts:
See attached Affidavit of FBI Special Agent Mikael Bergh

☑ Continued on the attached sheet.

/s/ Mikael Bergh
*Complainant's signature*

Mikael Bergh FBI Special Agent
*Printed name and title*

Approved as to form *Evan Mateer*
    AUSA  Evan Mateer

Sworn to before me by telephone.

Date: 03/06/2026

*Judge's signature*

City and state: McKinleyville, CA   Hon. Robert M. Illman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Mikael Bergh, Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), being duly sworn, state:

### I.     INTRODUCTION

1. I submit this affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant authorizing the arrest of Anthony Marvin K. PEARSON ("PEARSON") for being a felon in possession of a firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(1), committed on or about May 17, 2025, in the Northern District of California.

### II.     SOURCES OF INFORMATION

2. This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal law identified above have occurred.

3. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, including information provided by reports prepared by officers from the California Highway Patrol ("CHP"), body camera video, dashboard video and aviation video provided by CHP, and information provided by records and databases. Where I refer to conversations and events, I refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted. This affidavit also reflects my current understanding of the facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

### III.     AFFIANT BACKGROUND

4. I have been employed as a Special Agent of the FBI for approximately 22 years. I am currently assigned to the San Francisco Division, Oakland Resident Agency. My investigative responsibilities are violent crimes, which includes commercial robberies, illegal

1

firearms possession, and carjackings. I received training at the FBI Academy in Quantico, Virginia, including training on criminal procedure, search and seizure, and violent crimes. During the course of my career with the FBI, I have participated in numerous investigations involving violent and weapons-related crimes, and in the execution of numerous search and arrest warrants relating to such investigations.

5. As an FBI agent, I am authorized to investigate violations of federal law and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of federal law, including offenses enumerated in 18 U.S.C. § 922(g).

## IV.   APPLICABLE STATUTES

6. Title 18, United States Code, Section 922(g)(1) provides: "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive
any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

## V.   FACTS SUPPORTING PROBABLE CAUSE

7. On or about May 17, 2025, CHP arrested PEARSON after he engaged in a high speed flight from officers attempting to stop him for driving a stolen vehicle. During the investigation into PEARSON's vehicle theft and reckless flight, CHP discovered a loaded shotgun that he had attempted to hide in rubble in a nearby abandoned vehicle. CHP documented these events in written records, body worn camera footage, and dash cam footage. I have reviewed these records, from which I have learned the facts outlined below.

8. On or about May 17, 2025, at approximately 16:15, CHP patrol vehicles were

alerted to a possible stolen red Honda Accord, California license plate ***A138,[1] by a CHP aviation unit. The aviation unit advised that the Accord had stopped in a parking lot near East 12th Street and Derby Avenue in Oakland, California, and the driver had stepped out of the Accord. The driver was described as a bald black male wearing a black hoodie, grey shorts, white socks, and black Crocs. The aviation unit advised that there were also two female occupants in the vehicle, one described as a Hispanic female wearing a navy shirt, black leggings and tan slippers, and the other described as a Hispanic female with dark hair wearing a black tank top and denim shorts. As the Accord departed the parking lot with the three occupants, a marked CHP patrol vehicle was able to locate it as it turned onto East 12th Street.

9. When the marked CHP patrol vehicle got directly behind the Accord, the Accord immediately crossed solid double yellow lines while passing a vehicle stopped at a red light, and then made a right turn onto International Boulevard. The marked CHP patrol vehicle activated its overhead light and siren to conduct an enforcement stop, but the Accord failed to yield and a short pursuit ensued. During the pursuit, the Accord broke multiple California traffic laws while making its way on Oakland streets towards I-880. As the Accord was on the on-ramp to I-880 from 29th Avenue, the CHP aviation unit advised that they were visually tracking the vehicle, and the patrol vehicle broke off its pursuit in the interest of public safety.

10. The CHP aviation unit continued to track the Accord while it drove northbound on I-880 before getting off onto Embarcadero, and doubling back southbound on Oakland streets. The Accord then doubled back onto northbound I-880 at 66th Avenue before exiting at Oak Street in Oakland, and parking underneath I-880 by 4th Street. While the aviation unit tracked the movements of the Accord, the vehicle violated multiple California traffic laws and was driven with a disregard for public safety.

11. The CHP aviation unit directed marked patrol vehicles to the location where the

---

[1] The full license plate was known the CHP officers engaged in the events described, and is known to me. It is partially obscured in this affidavit to protect the personal identifying information of unrelated third parties.

3

Accord was parked. When CHP patrol vehicles arrived, the first CHP patrol vehicle located WITNESS 1, a female wearing a green tank top and denim shorts in the front passenger seat of the Accord and detained her. The second CHP patrol vehicle that arrived located a black male matching the driver's description standing next to a burned out RV parked underneath I-880, a short distance away from the Accord. CHP officers detained the suspected driver, while the Accord was found to have no further occupants. The CHP aviation unit informed the marked patrol vehicles that the second female passenger, WITNESS 2, had walked away into an adjacent parking area, and was located behind multiple RVs making her hard to see for the responding officers. WITNESS 2 was taken into custody, and was found to be wearing a grey shirt, black leggings and tan Ugg-style boots.

12. The driver was subsequently identified as PEARSON. When PEARSON was advised of his Miranda rights, he invoked his rights and did not want to answer any questions regarding the incident. When PEARSON was searched incident to arrest, a small clear baggie containing a white crystal substance was located in his front hoodie pouch pocket. The CHP aviation unit confirmed to the arresting officers that PEARSON was the driver of the Accord that they had observed earlier.

13. WITNESS 2 was also informed of her Miranda rights. When asked if she still wished to answer questions knowing her rights, she said "I don't care." WITNESS 2 told the CHP officers that she had been in the left rear seat of the Accord, and that PEARSON had been driving. She knew the driver as "Anthony." After her initial statement, WITNESS 2 was placed in the back of the patrol car. She later told a CHP officer that PEARSON had had a shotgun in a grey duffel bag in the vehicle. However, WITNESS 2 was not sure where PEARSON had put the duffel bag. WITNESS 1 was informed that she was not under arrest, but was being detained. WITNESS 1 stated that she was the front right passenger in the Accord, that she had been picked up around Fruitvale Avenue, and that she did not know the driver's name.

14. After being alerted by WITNESS 2 that PEARSON had had a firearm, CHP officers began searching for the bag with the gun. A CHP Officer searched the area of the

4

burned out RV not far from the Accord. PEARSON had been standing next to this burned out RV when officers had contacted him following his flight. The first officer to make contact with PEARSON described PEARSON as reaching into the burned out RV when he first observed PEARSON.  An image of PEARSON standing near the RV with his hands up as CHP arrived is included below.



15.     The RV was described by the CHP officers as having a burned and collapsed roof and sidewalls, exposing its interior.  This description is confirmed by the body worn camera footage.  Piles of trash, glass, and ashes covered the floor of the RV, and it was described as uninhabitable by the CHP officers. The duffel bag was described as clean and placed on top of a pile of trash, and was in an area fully accessible from outside the RV, due to the major fire

5

damage. Images depicting the burned out RV and the grey duffle bag are included below.





16.     When the CHP officers recovered the duffel bag, it was zippered shut. However, CHP officers observed that it had a long object inside, stretching the material of the bag. The CHP officers recognized this object as the barrel of a firearm. A search of the duffel bag showed that the object was a J. Stevens Arms Company/Savage Arms Company, model 620, 12-gauge shotgun, loaded with five shells. An image of the shotgun is included below.

6



      a.      **<u>Interstate Nexus for Seized Firearm and Ammunition</u>**

    17.    Your affiant contacted agents from the Bureau of Alcohol Tobacco and Firearms (ATF) to determine if the seized shotgun and the ammunition found in the firearm had travelled in interstate commerce. On February 19, 2026, the ATF informed me that both the shotgun and the ammunition had travelled in interstate commerce.

      b.      **<u>PEARSON is a Felon</u>**

    18.    Your affiant has reviewed the criminal history for PEARSON, and has determined that he has in excess of 15 felony convictions, punishable by imprisonment for a term exceeding one year, in state court dating back to 2004. Most recently, on January 4, 2024, PEARSON was convicted of a felony count of Vehicle Code 10851(A), Vehicle Theft, in Alameda County Superior Court. Prior to that conviction, on August 23, 2022 PEARSON was convicted of a count of Penal Code 29800(A)(1), Felon in Possession of a Firearm, and a felony count of Vehicle Code 10851(A), Vehicle Theft, in Alameda County Superior Court. On March 16, 2012,

PEARSON was convicted of one count of Vehicle Code 2800.3, Evading a Peace Officer while causing bodily injury or death, in Alameda County Superior Court. PEARSON was sentenced to 6 years imprisonment for that conviction.

## VI.   CONCLUSION

19.   On the basis of my participation in this investigation, and the information summarized above, there is probable cause to believe that on or about May 17, 2025, in the Northern District of California, Anthony Marvin K. PEARSON was a felon in possession of a firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(1).

_____
MIKAEL BERGH
Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me
pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this   6th   day of March 2026.

_____
HONORABLE Robert M. Illman
United States Magistrate Judge